## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON HOWARD, Individually and On Behalf of All Others Similarly Situated, | Civil Action No: 08 Civ. 2804 (RWS)(HBP) |
| Plaintiff, | ELECTRONICALLY FILED |
| v. | |
| THE BEAR STEARNS COMPANIES INC., THE BEAR STEARNS COMPANIES INC. EXECUTIVE COMMITTEE, JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG and JOHN DOES 1-10, | |
| Defendants. | |

[additional captions appear on next page]

### *WEBER* PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR (1) CONSOLIDATION (2) APPOINTMENT OF LEAD PLAINTIFFS AND LEADERSHIP STRUCTURE AND (3) ENTRY OF [PROPOSED] PRETRIAL ORDER NO. 1, AND IN OPPOSITION TO THE MOTIONS OF THE *HOWARD* PLAINTIFFS AND PLAINTIFF *LOUNSBURY* FOR THE APPOINTMENT OF LEAD COUNSEL AND RELATED RELIEF

Lester L. Levy, Esq.
Andrew E. Lencyk, Esq.
James Kelly-Kowlowitz, Esq.
**WOLF POPPER LLP**
845 Third Avenue
New York, New York 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093

Steve W. Berman, Esq.
Thomas M. Sobol, Esq.
Andrew M. Volk, Esq.
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0958

Proposed Interim Co-Lead Counsel for Plaintiffs

| | |
|---|---|
| ESTELLE WEBER, individually, on behalf of the Bear Stearns Companies Inc. Employee Stock Ownership Plan, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., CUSTODIAL TRUST COMPANY, JAMES CAYNE, ALAN SCHWARTZ, WARREN SPECTOR, SAMUEL MOLINARO, ALAN GREENBERG, and JOHN DOES 1 - 20,<br><br>Defendants. | Civil Action No: 08 Civ. 2870 (RWS)(JCF) |
| ANTHONY PISANO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG, and JOHN AND JANE DOES 1-20,<br><br>Defendants. | Civil Action No: 08 Civ. 3006 (UA) |
| HANS MENOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG, and JOHN AND JANE DOES 1-10,<br><br>Defendants. | Civil Action No: 08 Civ. 3035 (RWS)(HBP) |

| | |
|---|---|
| IRA GEWIRTZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG, and JOHN AND JANE DOES 1-20,<br><br>Defendants. | Civil Action No: 08 Civ. 3089 (RWS)(JCF) |
| DREW V. LOUNSBURY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES E. CAYNE, ALAN C. GREENBERG, ALAN D. SCHWARTZ, PAUL A. NOVELLY, FRANK T. NICKELL, FREDERICK V. SALERNO, VINCENT TESE, and JOHN AND JANE DOES 1-10,<br><br>Defendants. | Civil Action No: 08 Civ. 3326 (RWS) |
| SHELDEN GREENBERG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, ALAN C. GREENBERG, and JOHN AND JANE DOES 1-10,<br><br>Defendants. | Civil Action No: 08 Civ. 3334 (RWS) (HBP) |

| | |
|---|---|
| SCOTT WETTERSTEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, ALAN C. GREENBERG, and JOHN AND JANE DOES 1-10,<br><br>Defendants. | Civil Action No: 08 Civ. 3351 (UA) |
| RITA RUSIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG, and JOHN AND JANE DOES 1-20,<br><br>Defendants. | Civil Action No: 08 Civ. 3441 (UA) |
| LAWRENCE FINK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BEAR STEARNS COMPANIES, INC., JAMES CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., ALAN C. GREENBERG, and JOHN AND JANE DOES 1-20,<br><br>Defendants. | Civil Action No: 08 Civ. 3602 (UA) |

## TABLE OF CONTENTS

*Page*

I.   PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

　　A.   The Weber Plaintiffs Should Be Appointed Interim Lead Plaintiffs . . . . . . . . . . . 3

　　　　1.   The *Weber* Plaintiffs Have a Significant Interest in The Outcome
　　　　　　Of This Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

　　　　2.   The Appointment Of More Than One Interim Lead Plaintiff Will
　　　　　　Serve to Protect the Interests of the Entire Class . . . . . . . . . . . . . . . . . . . . 4

　　B.   The *Weber* Plaintiffs' Counsel Should Be Appointed Co-Lead Counsel . . . . . . . 6

　　　　1.   Both the *Weber* Plaintiffs' and *Howard* Plaintiffs' Counsel Have
　　　　　　Substantial Experience in Class Actions, ERISA Actions and Other
　　　　　　Complex Litigation, and Have the Requisite Resources to Prosecute
　　　　　　This Action, Although the *Weber* Plaintiffs' Class Action Trial
　　　　　　Experience Is Unparalleled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

　　　　2.   The *Weber* Plaintiffs' Counsel Have Already Undertaken Substantial
　　　　　　Work in Investigating and Pursuing the Claims of the Class . . . . . . . . . 11

　　　　3.   The *Howard* Plaintiffs' Proposed Structure Is Inefficient as Compared
　　　　　　To the *Weber* Plaintiffs' Proposed Structure . . . . . . . . . . . . . . . . . . . . . . . 14

　　　　4.   The Fact that *Weber* Plaintiffs' Counsel Have the Support of Numerous
　　　　　　Plaintiffs Favors the Appointment of *Weber* Counsel . . . . . . . . . . . . . . . 15

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

*Page*

*Bynum v. Gov't of the Dist. of Columbia*,
384 F. Supp. 2d 342 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Comverse Technology, Inc. Deriv. Litig.*,
06-CV-1849(NGG)(RER), 2006 U.S. Dist. LEXIS 88261 (E.D.N.Y. Dec. 6, 2006) . . . . 3

*In re Conseco, Inc. Sec. Litig.*,
120 F. Supp. 2d 729 (S.D. Ind. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dollens v. Zionts*,
Nos. 01 C 5931, 01 C 2826, 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001) . . . . 3

*In re GM ERISA Litig.*,
No. 05-71085, 2007 U.S. Dist. LEXIS 63209 (E.D. Mich. Aug. 28, 2007) . . . . . . . . . . . 7

*In re GM ERISA Litig.*,
No. 05-71085, 2006 U.S. Dist. LEXIS 16782 (E.D. Mich. Apr. 6, 2006) . . . . . . . . . . . . . 7

*Hirt v. U.S. Timberlands Serv. Co., LLC*,
C.A. Nos. 19575, 19577, 19578, 19584, 19592, 19608, 19613, 19632,
2002 Del. Ch. LEXIS 89 (Del. Ch. July 3, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re J.P. Morgan Chase Cash Balance Litig.*,
242 F.R.D. 265 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Malasky v. IAC/InteractiveCorp.*,
No. 04-7447, 2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Dec. 21, 2004) . . . . . . . . . . . . . 4

*Millman v. Brinkley*,
1:03-cv-3831-WSD, 1:03-cv-3832-WSD, 1:04-cv-0058-WSD,
2004 U.S. Dist. LEXIS 20113 (N.D. Ga. Oct. 1, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Nelson v. IPALCO Enters.*,
No. IP02-0477-C-H/K, 2005 U.S. Dist. LEXIS 16909 (S.D. Ind. Aug. 11, 2006) . . . . . . 5

*Nelson v. IPALCO Enters.*,
No. IP 02-477-C-H/K, 2003 U.S. Dist. LEXIS 26392 (S.D. Ind. Sept. 30, 2003) . . . . . . . 7

*Nelson v. IPALCO Enters.*,
    No. IP 02-477-C-H/K, 2003 U.S. Dist. LEXIS 4580 (S.D. Ind. Feb, 13, 2003) . . . . . . . . 7

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    MDL 05-1720, 2006 WL 2038650 (E.D.N.Y. Feb. 24, 2006) . . . . . . . . . . . . . . . . . . . . . 15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
    No. 03-8264, 2004 U.S. Dist. LEXIS 9571 (S.D.N.Y. May 27, 2004) . . . . . . . . . . . . . 4, 5

*Summers v. UAL Corp. ESOP Comm.*,
    No. 03 C 1527, 2005 U.S. Dist. LEXIS 11745(C.D. Ill. Feb. 17, 2005) . . . . . . . . . . . . . 7

*TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*,
    C.A. Nos. 18336, 18289, 18293, 2000 WL 1654504 (Del. Ch. Oct. 17, 2000) . . . . . . . . . 3

*Tittle v. Enron Corp.*,
    284 F. Supp. 2d 511 (S.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tittle v. Enron Corp.*,
    No. MDL 1446, 2006 WL 1662596 (S.D. Tex. June 7, 2006) . . . . . . . . . . . . . . . . . . . . . 7

*In re Touch Am. Holdings, Inc.*,
    No. CV-02-106-BU-SEH, 2006 U.S. Dist. LEXIS 94707 (D. Mont. June 15, 2006) . . . . 7

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## STATUTES AND RULES

Employee Retirement Income Security Act of 1974 ("ERISA")

    29 U.S.C. §§502(a)(2) and (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    29 U.S.C. §§1132(a)(2) and (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 23(g)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 23(g)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

Fed. R. Civ. P. 42(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Private Securities Litigation Reform Act ("PSLRA")

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITIES

*Manual for Complex Litigation* (Fourth) § 21.271 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Manual for Complex Litigation* (Fourth) § 21.272 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Plaintiffs Estelle Weber, Anthony Pisano, Ira Gewirtz, Rita Rusin and Lawrence Fink ("*Weber* Plaintiffs" or "Plaintiffs"),[1] respectfully submit this memorandum in opposition to the competing motions of Plaintiffs Aaron Howard and Shelden Greenberg ("*Howard* Plaintiffs") and Plaintiff Drew W. Lounsbury ("*Lounsbury*") for the appointment of interim lead plaintiffs, co-lead counsel and related relief, and in further support of their motion for entry of [Proposed] Pretrial Order No.1  (a) consolidating the above-captioned actions arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§502(a)(2) and (3), and §§1132(a)(2) and (3); (b) appointing the *Weber* Plaintiffs as Interim Co-Lead Plaintiffs on behalf of a proposed class of participants and beneficiaries of the Bear Stearns Companies Inc. Employees Stock Ownership Plan ("Bear Stearns ESOP" or "Plan") (the "Class"); and (c) appointing the firms of Wolf Popper LLP ("Wolf Popper") and Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Interim Co-Lead Counsel.[2]

## I.    PRELIMINARY STATEMENT

All movants concur that these actions are appropriate for consolidation under Fed. R. Civ. P. 42(a). However, appointment of interim co-lead plaintiffs and co-lead counsel is subject to competing motions filed by the *Howard* Plaintiffs and by Plaintiff *Lounsbury*.

There is no dispute, however, that both the *Weber* Plaintiffs' counsel, and the *Howard* Plaintiffs' counsel, are highly experienced in cases such as the instant litigation, and that either set of counsel would do an excellent job in prosecuting the consolidated action.  Plaintiff *Lounsbury* is also represented by fine attorneys, although *Lounsbury's* counsel appears to lack

---

[1] Since the filing of the motion, the *Weber* Plaintiffs now include two additional plaintiffs, Rita Rusin and Lawrence Fink.

[2] The *Weber* Plaintiffs filed their motion on March 28, 2008.  The *Howard* Plaintiffs filed their motion, brief ("Howard Br."), and supporting papers on April 8, 2008, and Plaintiff *Lounsbury* filed his motion, brief ("Lounsbury Br."), and supporting papers on April 10, 2008.

the resources possessed by counsel for the *Weber* Plaintiffs and the *Howard* Plaintiffs, as noted below.

Other factors relevant to the Fed. R. Civ. P. 23(g) inquiry support the appointment of the *Weber* Plaintiffs' leadership structure in this case. As set forth below, the *Weber* Plaintiffs' proposed leadership structure has the support of the plurality, or majority, of the plaintiffs in the above-captioned cases.[3] Moreover, as detailed below, the *Weber* Plaintiffs collectively held over 5,500 shares of Company stock in the ESOP during the proposed class period. The value of these shares was decimated as a result of defendants' alleged wrongdoing and breaches of fiduciary duty set forth in *Weber* Plaintiffs' complaints, with estimated losses of well over $800,000. Accordingly, the *Weber* Plaintiffs are highly motivated to prosecute this case for the benefit of the Class and the Plan.

The *Howard* Plaintiffs' proposed structure is disfavored as it requires the addition of liaison counsel, because their proposed co-lead counsel are both from outside New York State. Such a structure would invariably lead to more lawyer time spent in the case and more expenses. Appointing lead counsel with no presence in New York (requiring the presence of a third firm to serve as liaison counsel) and without the support of the majority of the plaintiffs, does not achieve efficiency and economy without jeopardizing fairness to parties.[4]

*Weber* Plaintiffs' counsel are seasoned litigators, and the senior partners in charge of this case have over 35 and 28 years of experience, respectively, in litigating some of the most complex class actions in this and other Districts. Their record and reputation are beyond question. Moreover, they have done the most work in advancing the claims of the Class in this litigation, and represent the movants with the most significant financial interests in the outcome of this litigation. Finally, the *Weber* Plaintiffs' counsel have unparalleled experience in taking

---

[3] As far as *Weber* Plaintiffs' counsel are aware, there are ten named plaintiffs who have filed complaints in these related ERIA actions to date. Of these, six (including movants) support the *Weber* Plaintiffs' proposed leadership structure.

[4] In contrast, the *Weber* Plaintiffs' structure does not require the addition of liaison counsel.

- 2 -

class action cases to trial and to judgment, if necessary. This additional experience redounds to the benefit of the proposed Class.

## II.    ARGUMENT

### A.    The Weber Plaintiffs Should Be Appointed Interim Lead Plaintiffs

#### 1.    The *Weber* Plaintiffs Have a Significant Interest in The Outcome Of This Litigation

The *Weber* Plaintiffs have a significant financial interest in the outcome of this litigation which favors their appointment as interim lead plaintiffs.[5]

The *Weber* Plaintiffs collectively held over 5,500 shares of Company stock in their ESOP Plan accounts, and the shares were a significant portion of their retirement savings.[6] Together, the *Weber* Plaintiffs lost well over $800,000 of their retirement savings as a result of the ESOP

---

[5] Although there are few decisions citing factors for appointment of interim lead plaintiffs in ERISA cases, claims on behalf of a plan under ERISA are most akin to a derivative case brought on behalf of a corporation, where many federal courts have found the size of the applicants' financial interest as a relevant factor in determining the appointment of lead plaintiffs. *See, e.g., In re Conseco, Inc. Sec. Litig.,* 120 F. Supp. 2d 729, 734 (S.D. Ind. 2000) (holding that there is a presumption in favor of appointing "[plaintiffs] with very large stock holdings" in a derivative action); *see also Dollens v. Zionts,* Nos. 01 C 5931, 01 C 2826, 2001 U.S. Dist. LEXIS 19966, at *17-18 (N.D. Ill. Dec. 4, 2001) (taking into account the holdings of the various plaintiffs in appointing lead plaintiff in a derivative action); *cf. Millman v. Brinkley,* Nos. 1:03-CV-3831-WSD, 1:03-CV-3832-WSD, 1:03-CV-0058-WSD, 2004 U.S. Dist. LEXIS 20113, at *10-11 (N.D. Ga. Oct. 1, 2004) (on motion to appoint lead plaintiffs and counsel in derivative case, court held that plaintiffs who "have continuously held" their stock during relevant time period "weighs in favor of Plaintiffs ... capacity to better represent the interests of the shareholders" of the company); *In re Comverse Technology, Inc. Deriv. Litig.,* 06-CV-1849 (NGG)(RER), 2006 U.S. Dist. LEXIS 88261, at *12 (E.D.N.Y. Dec. 6, 2006) (holding that "the largest financial interest" is "relevant," albeit "when all things are otherwise equal."). Like federal courts, state courts also emphasize the size of an applicant's financial interest in the litigation in selecting derivative lead plaintiffs. *See Hirt v. U.S. Timberlands Serv. Co., LLC,* C.A. Nos. 19575, 19577, 19578, 19584, 19592, 19608, 19613, 19632, 2002 Del. Ch. LEXIS 89, at *5 (Del. Ch. July 3, 2002) ("the relative economic stakes of the competing litigants in the outcome of the lawsuit" are "to be accorded 'great weight'") (quoting *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.,* C.A. Nos. 18336, 18289, 18293, 2000 WL 1654504, at *4 (Del. Ch. Oct. 17, 2000)).

[6] *See* Declaration of Steve W. Berman, filed herewith ("Berman Opp. Decl."), ¶¶ 2-5.

Plan's investment in Company stock.[7]  It is thus fair to say that the *Weber* Plaintiffs are highly

motivated, and have a sufficient interest in the outcome of the case to ensure vigorous advocacy.

*Cf.* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (lead plaintiff appointment provisions of Private Securities

Litigation Reform Act ("PSLRA")).[8] In contrast, Plaintiff *Lounsbury* had "approximately

$7,500" invested in the ESOP during the Class Period – or fewer than 50 shares.[9]  The *Howard*

Plaintiffs' papers are silent on this point.

### 2,    The Appointment Of More Than One Interim Lead Plaintiff Will Serve to Protect the Interests of the Entire Class

The *Weber* Plaintiffs further submit that having more than one lead plaintiff provides

better protection to the Class.  Numerous courts have recognized both the procedural and

substantive benefits that a co-lead plaintiff structure provides in class-wide litigation.  Case law

in this very District has held that a  "[co-lead plaintiff] structure provides flexibility and stability

to the class if presented with the situation that either co-lead plaintiff fails to address certain

interests within the class, drops out of the action or compromises the class in some fashion."

*Malasky v. IAC/InteractiveCorp.*, No. 04-7447, 2004 U.S. Dist. LEXIS 25832, at *14 (S.D.N.Y.

Dec. 20, 2004); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche

& Co.*, Nos. 03 Civ. 8264, 03 Civ. 8521, 03 Civ. 8935, 03 Civ. 9968, 04 Civ. 2038, 2004 U.S.

---

[7] Based on the decline in Bear Stearns stock price during the class period, multiplied by the total number of shares held by each of the *Weber* Plaintiffs, the *Weber* Plaintiffs' approximate losses based on such decline alone are over $823,000.  The approximate losses of Plaintiffs Weber, Pisano and Gewirtz alone are over $400,000.

[8] *Cf. Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (adequacy requirement is satisfied where: 1) class counsel is qualified, experienced, and generally able to conduct the litigation; 2) class members' interests are not antagonistic to one another; and 3) the class plaintiff *has sufficient interest in the outcome of the case to ensure vigorous advocacy*).

[9] No new shares were added to the ESOP after December 31, 2004.  On December 14, 2006 (the beginning of the proposed class period), Bear Stearns shares traded at approximately $160.  Assuming that is when Mr. Lounsbury valued his investment of $7,500 in the ESOP Plan, because $7,500 divided by $160 is 46.875, it appears that Mr. Lounsbury held fewer than 50 shares of Company stock in his ESOP account.

Dist. LEXIS 9571, at *82-83 (S.D.N.Y. May 27, 2004) (Sweet., J.) (noting that the creation of a co-lead plaintiff structure provides greater stability in the action should a decision later be reached that either co-lead plaintiff cannot adequately represent the class).

Plaintiff *Lounsbury* seeks appointment of only one interim lead plaintiff. If only one lead plaintiff is appointed, and if he were to subsequently to drop out of the action for whatever reason, this would undermine the efficient and orderly conduct of the proceedings, resulting in additional costs to the litigants as well as the loss of time and judicial resources. The entire process for appointment of a lead plaintiff(s) and/or lead counsel would have to be started anew, significantly delaying resolution of the Plan participants' claims.

Plaintiff *Lounsbury* claims that he is unique because he does not recall signing a release upon leaving his employment with Bear Stearns. He is not unique. Plaintiff Weber is still employed with Bear Stearns, and has not received any type of severance package or any indication that her employment was in jeopardy. Most of the other *Weber* Plaintiffs do not recall executing any releases with respect to their employment with Bear Stearns. Ira Gerwirtz believes he signed some sort of document releasing certain claims against Bear Stearns, but cannot recall the exact terms of that document. But Mr. Gewirtz left his employment with Bear Stearns in 2004, well before the events at issue in this litigation. To the extent that some Class members have signed (or may yet sign) releases, the *Weber* Plaintiffs do not plan to simply exclude them from the Class. To the contrary, they will attack the validity of any such release – just as their counsel has successfully done in the past. *See Nelson v. IPALCO Enters.*, No. IP02-0477-C-H/K, 2005 U.S. Dist. LEXIS 16909, *13-12 (S.D. Ind. Aug. 11, 2006) (granting summary judgment for plaintiffs on release defense).

The stake, diversity and number of *Weber* Plaintiffs will be a benefit to the entire Class of Plan participants.

**B.    The *Weber* Plaintiffs' Counsel Should Be Appointed Co-Lead Counsel**

The criteria of Rule 23(g)(1)(A) have been set forth in the *Weber* Plaintiffs' Moving

Brief, pp. 5-6. In addition, Rule 23(g)(1)(B) "invites the court to consider any other pertinent

factors." As made clear by the Advisory Committee Notes to Rule 23(g), courts and

commentators, "[n]o single factor is dispositive in evaluating prospective class counsel."

*Manual for Complex Litigation* (Fourth) ("*Manual*") § 21.271 (2004) (Criteria for Appointment);

*In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y. 2007) (citing §

21.271 of the *Manual* and holding "No single factor is dispositive"). *See also* Advisory

Committee Notes to Rule 23(g), 2003 Amendments, Paragraph 1(C) ("In evaluating prospective

class counsel, the court should weigh all pertinent factors. No single factor should necessarily be

determinative in a given case."). Thus, the Advisory Committee Notes emphasize that courts

should avoid appointment of class counsel by means of a rote quantitative comparison of a single

factor such as ERISA experience measured by the number of cases litigated, where other

experienced and able counsel may best serve the class' interests as a whole, as set forth below.

> **1.    Both the *Weber* Plaintiffs' and *Howard* Plaintiffs' Counsel Have Substantial Experience in Class Actions, ERISA Actions and Other Complex Litigation, and Have the Requisite Resources to Prosecute This Action, Although the *Weber* Plaintiffs' Class Action Trial Experience Is Unparalleled**

There is no question that both *Howard* Plaintiffs' counsel, and *Weber* Plaintiffs' counsel,

have substantial experience in "handling class actions, other complex litigation, and the types of

claims asserted in the action," Fed. R. Civ. P. 23(g)(1)(A)(ii), as well as ample resources to

prosecute this litigation. *Weber* Plaintiffs' counsel, Hagens Berman, is a 41-lawyer firm focused

almost exclusively on representing plaintiffs in class action cases around the country. *Weber*

Plaintiffs' counsel, Wolf Popper, is a prestigious law firm focused on the same type of litigation,

with over 60 years of experience, whose reputation and success in prosecuting complex

securities and ERISA actions are well known to this Court.

Hagens Berman has served as lead or co-lead counsel in a number of ERISA class action cases on behalf of current and former employees suing for losses suffered to company stock in their retirement Plan accounts.[10] The firm has obtained many favorable ERISA rulings,[11] and substantial settlements,[12] and has litigated several ERISA cases through the summary judgment stage and one case through trial.

In addition, Hagens Berman has unparalleled experience in actual trials of MDL and other class action cases.[13] While *Howard* Plaintiffs' counsel are fine attorneys with great

---

[10] Hagens Berman served or serves in a leadership capacity in ERISA cases on behalf of plan participants in the following companies: *General Motors,* No. 05-71085 (E.D. Mich.); *Touch America Holdings, Inc.,* No. CV-02-106-BU-SHE (D. Mont.), *IPALCO Enterprises et al.,* Case No. IP 02-0477-C-H/K (S.D. Ind.); *United Airlines,* No. 03 C 1537 (C.D. Ill.); *Enron Corp.,* MDL No. 1446 (S.D. Tex.).

[11] *See, e.g., Tittle v. Enron Corp.,* 284 F. Supp. 2d 511 (S.D. Tex. 2003) (denying motions to dismiss in large part); *Tittle v. Enron Corp.,* No. MDL 1446, 2006 WL 1662596 (S.D. Tex.  June 7, 2006) (certifying class); *Nelson v. IPALCO Enters.,* No. IP 02-477-C-H/K, 2003 U.S. Dist. LEXIS 4580 (S.D. Ind. Feb, 13, 2003) (denial of motion to dismiss); *Nelson v. IPALCO Enters.,* No. IP 02-477-CH/K, 2003 U.S. Dist. LEXIS 26392 (S.D. Ind. Sept. 30, 2003) (certifying class); *Summers v. UAL Corp. ESOP Comm.,* No. 03 C 1537, 2005 U.S. Dist. LEXIS 11745 (C.D. Ill. Feb. 17, 2005) (certifying class); *In re Touch Am. Holdings, Inc.,* No. CV-02-106-BU-SEH, 2006 U.S. Dist. LEXIS 94707 (D. Mont. June 15, 2006); *In re GM ERISA Litig.,* No. 05-71085, 2007 U.S. Dist. LEXIS 63209 (E.D. Mich. Aug. 28, 2007) (denying second motion to dismiss in large part); *In re GM ERISA Litig.,* No. 05-71085, 2006 U.S. Dist. LEXIS 16782 (E.D. Mich. Apr. 6, 2006) (denying first motion to dismiss in large part).

[12] *See* Declaration of Steve W. Berman in Support of *Weber* Plaintiffs' Motion for (1) Consolidation, (2) Appointment of Lead Plaintiffs and Leadership Structure, and (3) Entry of [Proposed] Pretrial Order No. 1, at ¶ 6-7.

[13] Hagens Berman has been lead or co-lead counsel in the following class action cases that went to trial: *In re Pharmaceutical Indus. Average Wholesale Price Litig.* MDL No. 1456 (D. Mass) (judgment against two defendants after trial); *In re Visa Check/MasterMoney Antitrust Litig.,* CV-96-5238 (E.D.N.Y.) (settled on eve of trial for over $3 billion in cash and over $20 billion in injunctive relief); *In Re: Disposable Contact Lens Antitrust Litigation,* MDL No, 1030 (M.D. Fla.) (settled during trial); *Hankin, et. al. v. City of Seattle,* 00-1672P (W.D. Wash.) (settled after judgment for Plaintiffs after trial); *In re Burlington Northern & Santa Fe Railway Co. Employee Settlement Agreements Litigation,* MDL Docket No. 1418 (W.D. Wash.) (partial settlement and then judgment for remaining defendants after trial). *See also In re Boeing Sec. Litig.,* C-97-1715-TSZ (W.D. Wash. 2001) (co-lead counsel in case resulting in $92.5 million settlement on behalf of Boeing stockholders); *In re Dynamic Random Access Memory Antitrust Litigation* ("DRAM") (Hagens Berman, as co-lead counsel, organized and supervised scores of co-counsel, wrote and oversaw all briefing (including class certification, summary judgment, and trial briefs), coordinated with counsel for indirect purchaser class, took or supervised the taking of over 100 depositions (foreign and domestic), and negotiated over $320 million in settlements for the class).

experience in the pretrial phases of ERISA litigation, neither *Howard* Plaintiffs' counsel nor Plaintiff *Lounsbury's* counsel have *Weber* Plaintiffs' Counsel's class action trial experience.

Hagens Berman's efforts in this case are headed by Steve W. Berman. Mr. Berman has served as lead or co-lead counsel in ERISA, securities, consumer, products liability, antitrust, employment class actions, and complex litigations throughout the country. Mr. Berman's successes include obtaining a settlement of $92.5 million in the *Boeing Securities Litigation*, representing stock and bondholders in the *Bonneville Pacific Securities Litigation* which resulted in settlements exceeding $30 million, and gaining approval of a $290 million settlement in the *Louisiana Pacific Siding Litigation*, the largest product liability settlement ever obtained in the Pacific Northwest.

Perhaps most notable is Mr. Berman's role as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the historic tobacco litigation. The announcement of the final settlement found Mr. Berman in his ninth week of trial presenting the state of Washington's case to a jury.

Recently, Mr. Berman headed up the trial team that achieved a landmark victory in a prescription drug lawsuit. In a decision handed down on June 21, 2007, Judge Patti Saris of the U.S. District Court for the District of Massachusetts found after a four week bench trial that three major companies violated the Massachusetts consumer protecting act by reporting false "Average Wholesale Prices" for a number of prescription drugs. The "Average Wholesale Price," or AWP, is a benchmark figure reported by drug manufacturers to commercial publications that publish compendia of prescription drug prices. Health plans, government health programs such as Medicaid and other "third party payors" use these AWP figures to determine how much to pay doctors and pharmacies for drugs which are given to their members and insureds. The June 21, 2007 ruling is part of a much larger and ongoing case challenging the nationwide use of AWP on behalf of consumers, States and third-party payors.

In April 2000, the *National Law Journal* listed Mr. Berman as the top litigator in the state and, in June 2000, named him as one of the 100 most powerful lawyers in the nation. In January 2001, *Seattle Magazine* featured him in an issue profiling the top lawyers in Seattle. In June 2006, the *National Law Journal* once again named Mr. Berman as one of the nation's 100 most influential lawyers in America. Mr. Berman was also named as a finalist for the Trial Lawyer of the Year award for 2006 by *The Trial Lawyers for Public Justice*.

Similarly, Wolf Popper is also an acknowledged leader in the field of complex class action litigation, securities, and ERISA litigation. Recently, Wolf Popper represented the State of New Jersey, Division of Investment, in recovering in excess of \$190 million in a large, complex securities class action against Motorola, Inc., three business days before the beginning of trial. Also recently, Wolf Popper has prosecuted, as interim co-lead counsel, *In re AIG ERISA Litigation*, Master File No. 04-CV-9387 (JES) (S.D.N.Y.), relating to various accounting improprieties and bid rigging allegations at AIG which led to the ouster of its longtime Chairman Maurice Greenberg.[14] Wolf Popper was also recently appointed interim co-lead counsel by Judge Sidney Stein in *Gray v. Citigroup, Inc.*, Case No. 07-CV-9790 (S.D.N.Y.) (SHS) (DCF), a consolidated ERISA class action on behalf of participants and beneficiaries of certain of Citigroup's retirement plans. In appointing Wolf Popper as co-lead counsel over competing groups of movants, including Plaintiff *Lounsbury's* Counsel, Judge Stein stated that "applying each of the four factors in Rule 23(g)(1)(A)... I think the group most able to represent the plaintiffs as interim lead counsel will be Wolf Popper and Harwood Feffer" and that they "...have the deeper experience overall." Moreover, insofar as the crux of this litigation will involve breaches of fiduciary duty, and Bear Stearns's underlying financial and accounting fraud,

---

[14] In *AIG*, Judge Sprizzo appointed Wolf Popper, Keller Rohrback, and two other firms as a "provisional" committee of four firms to prosecute the action (*i.e.*, the functional equivalent of "interim" counsel), which they have done over the last four years.

Wolf Popper has been renowned for decades for its expertise in breach of fiduciary duty, and financial fraud cases.[15]

Wolf Popper's efforts in this case will be headed by Lester L. Levy. Mr. Levy is the Chairman and Managing Partner of Wolf Popper LLP. He has prosecuted hundreds of class actions and has recovered over one billion dollars for the class members he has represented. He is a recognized expert in the specialized field of complex class action litigation and has lectured in complex litigation at the University of Illinois and the University of Miami Law Schools. Mr. Levy's experience includes acting as co-lead counsel in a major securities fraud action against Deutsche Bank, A.G. and its senior officer, before Judge Koeltl. The $58 million recovery, obtained on the eve of trial, was equivalent to approximately 48% of the class' maximum possible recovery, and approximately 96% of the class' most likely recovery.

Recently, Mr. Levy headed the nation-wide securities class action against Motorola, Inc. On the eve of trial, the defendants paid $190,000,000 to the class to resolve the federal securities litigation. In approving the $190,000,000 recovery for the Class, the Court stated, "You did a great very professional job here. This was a hard fought, but extremely professionally fought battle and I appreciate it. Thank you." Mr. Levy was also recently in charge of the team of lawyers that prosecuted *In re Coordinated Title Insurance Cases*. The presiding Justice commented, in approving the settlement on July 29, 2005, that the prosecution by the Firm "was lawyering of the highest quality."[16]

In 2007, Mr. Levy was selected as one of New York "Super Lawyers"®. This selection (according to Super Lawyers) represents the top 5% of attorneys practicing in New York City.

---

[15] *See* firm resume attached as Ex. E to the Declaration of Lester L. Levy in Support of *Weber* Plaintiffs' Motion for (1) Consolidation, (2) Appointment of Lead Plaintiffs and Leadership Structure, and (3) Entry of [Proposed] Pretrial Order No. 1. ("Levy Decl.").

[16] Mr. Levy was plaintiffs' co-lead counsel in *Seidman v. Stauffer Chemical Co.*, (D. Conn.) where at the successful conclusion of the case, Chief Judge Daly remarked that plaintiffs' co-lead counsel had acted throughout the litigation "...in accord with the highest standards of the bar, and it was a pleasure to deal with you and to listen to you, and to review your work..."

Further, *Weber* Plaintiffs' counsel have each financed large class action litigations[17] and have the necessary and proven resources to finance this litigation.[18]

Insofar as both the *Weber* and *Howard* Plaintiffs' counsel are highly experienced and no doubt will do an excellent job on behalf for the Class and the Plan, the Court should look to other factors in determining the appointment of interim counsel under Rule 23(g).

### 2. The *Weber* Plaintiffs' Counsel Have Already Undertaken Substantial Work in Investigating and Pursuing the Claims of the Class

The first factor under Rule 23(g)(A)(ii), which focuses on the work counsel has done to advance the litigation, *see, e.g., Bynum v. Gov't of the Dist. of Columbia*, 384 F. Supp. 2d 342, 345 (D.D.C. 2005), favors *Weber* Plaintiffs' counsel. *Weber* Plaintiffs' counsel have been diligent in identifying, investigating and prosecuting the claims in this action.

The *Weber* Plaintiffs' counsel drafted their complaints after an extensive factual investigation. The firms coupled their factual investigation with their extensive knowledge of the law of ERISA, taking into account the ongoing development of the law in this area.[19]

---

[17] For example, in the *Motorola* case discussed above, Wolf Popper recently deployed extensive resources to review millions of pages of documents, take depositions and marshal evidence, up to the eve of trial, and Wolf Popper is currently handling a document production in the tens of millions of pages in *Stumpf v. Neil R. Garvey, et al. (In re Tycom Ltd. Securities Litig.)*, Docket No. 03-CV-1352 (D.N.H.), a federal securities class action on behalf of purchasers of Tycom Ltd. stock, against Tyco International Ltd., Tycom Ltd., and Dennis Kozlowski, now concluding discovery, which documents are maintained electronically on a database managed by the firm's IT staff and paralegals. Hagens Berman likewise has substantial resources. As set forth above, Hagens Berman has taken a leading role among plaintiffs' firms in pursuing employee lawsuits and ERISA violations on behalf of participants and beneficiaries in employer-sponsored benefit plans, having served or currently serving as lead or co-lead counsel in many ERISA class actions. In appointing Hagens Berman to these lead positions, courts have, of necessity, recognized that the firm has sufficient resources to prosecute these actions.

[18] In contrast, while Plaintiff *Lounsbury* is represented by counsel with a record of success, his counsel appears to have neither the available resources nor depth of experience of the *Weber* Plaintiffs' counsel. According to the website of his counsel, Stull, Stull & Brody, the firm has 15 attorneys, while it has well over 100 major class actions and/or investigations pending. *See* www.ssbny.com/filedcases/index.html.

[19] The *Weber* Plaintiffs' complaints provide detailed allegations regarding the background of the subprime mortgage industry and the events leading up to Bear Stearns' debacle. *See* Weber Complaint ¶¶ 35-57; Pisano Complaint ¶¶ 51-90. Further, the *Weber* Plaintiffs' complaints contain original work and did not track allegations from the *Howard* Complaints, which the *Howard* Plaintiffs wrongly imply. The *Weber* complaint was filed on March 17, 2008, only one day after the *Howard* Complaint was filed. Neither

Since filing the *Weber* complaint on March 18, 2008, *Weber* Plaintiffs' counsel have dedicated substantial resources to advancing the case's prosecution for the benefit of the Class. For example, *Weber* Plaintiffs' Counsel has:

- retained the services of a Washington, D.C. firm who has been actively monitoring the Congressional investigations into the collapse of Bear Stearns. This same firm -- Cuneo Gilbert & LaDuca, LLP -- was involved in the same capacity in the *Enron* ERISA Litigation, and the fruits from that Congressional investigation were invaluable to the prosecution of the *Enron* ERISA case;

- requested Plan documents from Bear Stearns under ERISA §104(b) prior to *Howard* Plaintiff's counsel (*see* Ex. A attached to the Declaration of Lester L. Levy, filed herewith ("Levy Opp. Decl."));

- negotiated with, procured a commitment from Bear Stearns' counsel to produce, and already received certain Plan documents under ERISA §104(b) (*id.*);

- sent a document preservation letter to Defendants (again prior to *Howard* Plaintiff's counsel) (*see* Ex. B attached to the Levy Opp. Decl.);

- procured Defendants' counsel's response, by letter dated March 27, 2008, confirming their preservation of documents and data; (*see* Ex. C attached to the Levy Opp. Decl.);

- sent a FOIA request to the Securities and Exchange Commission ("SEC") (and already received a letter from the SEC stating that it assigned a research specialist to the FOIA request) (*see* Ex. D attached to the Levy Opp. Decl.);

---

plaintiff Weber nor her counsel reviewed the *Howard* Complaint before she filed her complaint, let alone track any of its allegations. *See* Levy Opp. Decl. ¶ 3. Similarly, Anthony Pisano filed his complaint on March 24, 2008, almost two weeks before Plaintiff Shelden Greenberg filed his complaint on April 3, 2008.

- sent a FOIA request to the Department of Labor (and the Department of Labor already indicated that it would produce documents in response to that request on or about April 18, 2008) (*see* Ex. E attached to the Levy Opp. Decl.);

- communicated with a number of aggrieved Plan participants; and conducted further factual research in preparation for drafting the consolidated complaint; and

- filed complaints on behalf of five clients, including the *Weber* Plaintiffs.  Wolf Popper and Hagens Berman's clients, who suffered significant losses as a result of their investments in the Plan, are actively participating in this litigation, and are willing and able to serve as lead plaintiffs at the class certification stage of this litigation.

The *Weber* Plaintiffs' Counsel have undertaken substantial work in investigating and pursuing claims for the Class, and have invested substantial resources in the prosecution of this litigation.[20]  Accordingly, the *Weber* Plaintiffs' counsel are the preferred interim Class counsel under this critical factor.  *See* Rule 23(g)(1)(C)(i).

---

[20] It is curious that *Howard* Plaintiffs' Counsel believes that they should be afforded credit for notifying the Court that the ERISA actions should not be consolidated with the related securities or derivative cases.  Bear Stearns' March 26, 2008, letter to the Court did not request that the ERISA cases be consolidated with the securities and derivative cases.  In fact, the letter did not even request that any of the cases be consolidated.  Defendants merely requested that the ERISA, securities, and derivative cases be assigned to Judge Sweet "in the interest of judicial efficiency and coordination" because the related cases were, at the time, assigned to either Judge Sweet, Judge Marrero, or Judge Pauley.  Accordingly, the *Weber* Plaintiffs agreed to Bear Stearns' request, with no additional commentary, because there was no reason to believe that the Court did not understand the difference between consolidating cases and coordinating cases.  The *Weber* Plaintiffs filed their motion requesting the consolidation of the ERISA cases (and not the related securities or derivative cases) on March 28, 2008, two days after the Court received Bear Stearns' letter (the Defendants have since filed a response supporting the consolidation of the ERISA cases).

Also, although Plaintiff *Lounsbury* highlights his allegation that the members of the Finance and Risk Committee were responsible for overseeing the Plan, the language relied on in the *Lounsbury* Compaint does not appear to indicate that they have such responsibilities.  *See Lounsbury* Complaint ¶¶13-19.

3.    The *Howard* Plaintiffs' Proposed Stucture Is Inefficient as Compared to the
      *Weber* Plaintiffs' Proposed Structure

The Schiffrin firm is based in Radnor, PA. Keller Rohrback is based in Seattle, WA.

Since the *Howard* Plaintiffs' two proposed co-lead firms are both located outside of New York

State, they are proposing a leadership group that includes a third firm, Dealy & Silberstein

("Dealy"), as liaison counsel. Adding a third law firm to the proposed leadership structure is

contrary to the *Manual for Complex Litigation* which underscores that "[t]he most important

factor [in selecting lead counsel] is 'achieving efficiency and economy without jeopardizing

fairness to the parties.'" (Howard Br. at 9), citing *Manual*, at §10.211.) In contrast, Wolf Popper

is located in New York, with easy access to Bear Stearns' (and its acquirer's, JPMorgan Chase

& Co. ("JPMorgan")) headquarters, as well as the Court, and provides assurance that at least one

of the co-lead firms can appear before the Court on a moment's notice. The *Weber* Plaintiffs'

proposed two-firm structure will also be more efficient in that it will mean less lawyer hours and

less duplication to be borne by the Class, than the three-law-firm structure required to be used by

the *Howard* Plaintiffs.

Further, the cost of Schiffrin and Keller's time and travel to hearings in this litigation will

be significant. The overwhelming number of Bear Stearns employee and third-party witness

depositions are expected to be in New York, since the headquarters of Bear Stearns and

JPMorgan are in New York, as are defendants' counsel. To the extent that Schiffrin and Keller

are the only co-lead firms proposed, they will have to travel to the numerous depositions,

hearings and meetings expected to take place in New York in this vast litigation, which will be

inefficient and costly. *See In re Tyco Int'l, Ltd. Sec. Litig.*, MDL No. 02-1335-B (D.N.H. Dec.

18, 2002) (factor which helped "tip the balance" in favor of appointment of certain counsel in

charge of the ERISA cases was "the advantage of proximity to both this court and the litigation's

likely center of gravity in New York.") (*See* Ex. D attached to the Levy Decl.).

- 14 -

### 4. The Fact That *Weber* Plaintiffs' Counsel Have the Support of Numerous Plaintiffs Favors the Appointment of *Weber* Counsel

Although the *Howard* Plaintiffs argue that the Court cannot properly consider the support of plaintiffs or their counsel in assessing an application under Rule 23(g), the *Weber* Plaintiffs respectfully disagree. Rule 23(g), the Advisory Committee Notes thereto (*supra* at 6), and the *Manual* § 21.272, all make clear that the court should consider "any" or "all" pertinent factors that may bear on counsel's ability to fairly and adequately represent a class. *See* Fed. R. Civ. P. 23(g)(1)(B); Ex. F attached to the Levy Opp. Decl. (full text of the *Manual*, § 21.272). A plurality, if not the majority, of the plaintiffs involved in this action support the structure proposed by the *Weber* Plaintiffs. *See* supra note 3. Such support of the other plaintiffs and/or their experienced counsel, while not dispositive, certainly is relevant.[21]

## III. CONCLUSION

Both *Weber* Plaintiffs' counsel and the *Howard* Plaintiffs' counsel are highly experienced counsel in similar litigation and fully capable of doing an excellent job in prosecuting this action on behalf of the Class. Plaintiff *Lounsbury* is also represented by fine attorneys, but those attorneys appear to lack the available resources and depth of experience of *Weber* Plaintiffs' counsel. Other factors the Court should consider on this motion, including the efficiency of the leadership structure, the class action trial experience of the firms involved, the amount of work done in investigating and prosecuting the claims on behalf of the Class, the financial interest of the named plaintiffs in the outcome of the litigation, and the support of plaintiffs in the litigation, demonstrate that the *Weber* Plaintiffs' motion for (i) consolidation of the above-captioned actions, (ii) appointment of the *Weber* Plaintiffs as Interim Co-Lead Plaintiffs on behalf of the proposed Class, and (iii) appointment of the firms of Wolf Popper and Hagens Berman as

---

[21] The court in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL 05-1720, 2006 WL 2038650 at *2 (E.D.N.Y. Feb. 24, 2006), considered the support of other plaintiffs' counsel as a deciding factor in appointing interim class counsel because the competing law firms seeking appointment were eminently qualified (as *Weber* and *Howard* Plaintiffs' Counsel are here).

Interim Co-Lead Counsel, should be granted, and the competing motions of the *Howard*

Plaintiffs and Plaintiff *Lounsbury* should be denied.

Dated: New York, New York
        April 21, 2008

Respectfully submitted,

WOLF POPPER LLP

By: _____
Lester L. Levy (LL-9956)
Andrew E. Lencyk (AL-4329)
James Kelly-Kowlowitz (JK-9616)

845 Third Avenue
New York, New York 10022
Tel. (212) 759.4600

Steve W. Berman, Esq.
Thomas M. Sobol, Esq.
Andrew M. Volk, Esq.
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0958

**Proposed Interim Co-Lead Counsel for
Plaintiffs**