UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X


IN RE BEAR STEARNS COMPANIES, INC.    08 M.D.L. No. 1963(RWS)
SECURITIES, DERIVATIVE, AND EMPLOYEE
RETIREMENT INCOME SECURITY ACT (ERISA)
LITIGATION    OPINION


This Document Relates To:

07-Civ-10453
08-Civ-0855
08-Civ-2793
08-Civ-2804
08-Civ-2866
08-Civ-2870
08-Civ-3006
08-Civ-3013
08-Civ-3035
08-Civ-3089
08-Civ-3326
08-Civ-3334
08-Civ-3351
08-Civ-3441
08-Civ-3602
08-Civ-4972
08-Civ-5054
08-Civ-5170
08-Civ-5489
08-Civ-6995
08-Civ-7335
08-Civ-8194

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/5/09

----------------------------------------X

**Sweet, D.J.**

## I.    INTRODUCTION

Presently pending before the Court are approximately 22 actions stemming from the recent collapse of the Bear Stearns Companies, Inc. ("Bear Stearns" or the "Company"). The above-captioned cases include class actions alleging violations of the Securities Exchange Act of 1934 (the "Securities Actions"); [1] class actions alleging breaches of fiduciary duties under the Employee Retirement Income Securities Act ("ERISA") (the "ERISA Actions"); [2] and a derivative action brought on behalf of the Company (the "Derivative Action"). [3]

---

[1] The Securities Actions include: Eastside Holdings, Inc. v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 2793; Becher v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 2866; Greek Orthodox Archdiocese Found. v. The Bear Stearns Cos., et al., No. 08 Civ. 3013; Schwartz v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 4972; Bransbourg v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 5054; Zicherman v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 6995; Starace v. The Bear Stearns Cos., Inc., et al., 08 Civ. 7335; and Rand v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 8194.
[2] The ERISA Actions include:  Howard v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 2804; Weber v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 2870; Pisano v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 3006; Menos v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 3035; Gerwitz v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 3089; Lounsbury v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 3326; Greenberg v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 3334; Wettersten v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 3351; Rusin v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 3441; Fink v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 3602; Mizrahi v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 5170; and Janes v. The Bear Stearns Cos., Inc., et al., No. 08 Civ. 5489.
[3] The Derivative Action is Cohen  v. The Bear Stearns Cos., Inc., et al., No. 07 Civ. 10453, which was previously consolidated with Birn v. Cayne et al., No. 08 Civ. 0855.

Several motions have been made for consolidation of these cases, pursuant to Rule 42, Fed. R. Civ. P.; for appointment as lead plaintiff in the consolidated actions, pursuant to 15 U.S.C. § 78u-4(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and for the approval of lead counsel, pursuant to Rule 23.

For the reasons set forth below, the Securities Actions are consolidated, the State of Michigan Retirement Systems ("SMRS") is appointed lead plaintiff in the Securities Actions, and Labaton Sucharow LLP ("Labaton Sucharow") and Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") are appointed lead counsel. The ERISA Actions are also consolidated, plaintiffs Aaron Howard and Shelden Greenberg (the "Howard Plaintiffs") are appointed interim co-lead plaintiffs, Keller Rohrback L.L.P. ("Keller Rohrback") and Schiffrin Barroway Topaz & Kesser, LLP ("SBTK") are appointed interim co-lead counsel, and Dealy & Silberstein, LLP ("Dealy & Silberstein") is appointed interim liaison counsel. Finally, plaintiffs Samuel Cohen's and Jerome Birn's (the "Derivative Plaintiffs") motion to appoint Brower Piven, A Professional Corporation ("Brower Piven"), and Robbins Umeda & Fink, LLP

2

("RUF") co-lead counsel in the Derivative Action is granted.
All other motions pending before the Court related to these
actions are denied.

The Court reserves the ability to alter this structure
at any time and for any reason, and will do so if it finds that
the progress of the litigation is being delayed, that expenses
are being unnecessarily enlarged, or if the structure
established proves detrimental, in any way, to the best
interests of the proposed class.

## II.  **FACTUAL OVERVIEW AND PRIOR PROCEEDINGS**

### a.  **The Facts**

The first related complaint involving the events
surrounding the collapse of Bear Stearns was filed in the
Southern District of New York on November 19, 2007.  In
addition to the 20 complaints originally filed in this
District against the Company and various Bear Stearns
officers, directors, and employees (collectively, the
"Defendants"), two additional actions were transferred as a
result of the United States Judicial Panel on Multidistrict
Litigation's August 18, 2008 order transferring all related

3

cases to this Court.[4] While many of the complaints allege
different causes of action, all of the claims relate to the
same underlying set of events during the week of March 10,
2008, which led to the eventual sale of Bear Stearns to JP
Morgan Chase & Co. ("JP Morgan").

According to the complaints, Bear Stearns is a global
financial services firm with its headquarters in New York City
whose core business operations include institutional equities,
fixed income, investment banking, global clearing services,
asset management, and private client services. Plaintiffs
allege, inter alia, that on March 10, 2008, information began
leaking into the market suggesting that Bear Stearns had
liquidity problems, causing the Company's stock to drop in
value. Following the market's close on March 13, 2008, news
that Bear Stearns was forced to seek emergency financing from
the Federal Reserve and JP Morgan reached the market, resulting
in another steep drop in value. On Sunday, March 16, 2008, it
was announced that JP Morgan Chase had agreed to purchase Bear
Stearns for $2.00 a share, and by Monday, March 17, 2008, the
Company's stock had fallen to $4.30 per share from a fifteen-
month high of approximately $160. All of the plaintiffs allege

---

[4] The transferred actions are Starace v. The Bear Stearns Companies, Inc., et
al, C.A., No. 08 Civ. 7335; and Rand v. The Bear Stearns Cos., Inc., et al.,
No. 08 Civ. 8194.

4

that they suffered some loss as a result of these events,
although the causes of action they assert vary.

## b.  **The Securities Actions**

Several of the above-referenced actions allege
violations of Sections 10(b) and 20(a) of the Exchange Act, as
amended by the PSLRA, and Rule 10b-5 promulgated thereunder.
The Securities Actions allege that Defendants issued materially
false and misleading statements regarding the Company's business
and financial results, resulting in the trading of Bear Stearns
stock at artificially inflated prices during the relevant time
period.  In the majority of the Securities Actions, the class
period runs from December 14, 2006, the day Bear Stearns
reported its financial results for fiscal year 2006, and March
14, 2008, the day after the news that Bear Stearns was seeking
emergency funding from the Federal Reserve and JP Morgan reached
the market.

However, three plaintiffs allege more limited class
periods.  Plaintiff Zicherman alleges a class period limited to
the week of March 10, 2008; Greek Orthodox Archdiocese
Foundation's ("Greek Orthodox") class period runs from March 12-

5

14, 2008; and Schwartz alleges a two-day class period limited to March 13-14, 2008.

On May 16, 2008, three shareholder groups moved for consolidation and appointment as lead plaintiff and lead counsel of the Securities Actions pursuant to Rule 42(c), Fed. R. Civ. P., and the PSLRA, 15 U.S.C. § 78u-4: 1) SICAV Inversiones Campos del Montiel and San Antonio Fire & Police Pension Fund (collectively "SICAV"); 2) the Commonwealth of Massachusetts Pension Reserves Investment Trust Fund ("Massachusetts"); 3) and the State of Michigan Retirement Systems ("SMRS").

Shortly thereafter, on May 19, 2008, Greek Orthodox moved for appointment as lead plaintiff and lead counsel. On June 5, 2008, SICAV filed a Notice of Non-Opposition to SMRS' motion. Massachusetts filed a similar motion on June 10, 2008. On June 11, 2008, the motions for consolidation and lead plaintiff and appointment of lead counsel in the Securities Actions were heard on submission.

On June 2, 2008, a related class action was filed by Gilles Bransbourg on behalf of current and former employees of Bear Stearns compensated in part or in whole by vested restricted stock units ("RSUs") and/or capital accumulation plan

6

units ("CAP Units") (the "Bransbourg Action"). On July 8, 2008,
SMRS filed a motion to consolidate the Bransbourg Action with
the other cases alleging violations of the federal securities
laws, a motion opposed by Bransbourg. On August 19, 2008,
Bransbourg filed a motion for appointment as lead plaintiff and
and lead counsel.

#### c. **The ERISA Actions**

Many of the complaints filed against Bear Stearns
allege that Defendants breached their fiduciary duties under
ERISA in connection with the continued offering of Bear Stearns
stock as an investment option in the Bear Stearns Employee Stock
Ownership Plan (the "Plan"), despite the fact that Defendants
knew Bear Stearns stock to be an imprudent investment
alternative. Plaintiffs in the ERISA Actions seek relief
pursuant to ERISA §§ 409 and 502, 28 U.S.C. §§ 1109, 1132, on
behalf of the Plan and all participants in or beneficiaries of
the Plan who sustained losses to their retirement accounts.

On March 28, 2008, Plaintiffs Estelle Weber, Anthony
Pisano, and Ira Gerwitz (the "Weber Plaintiffs") filed a motion
seeking consolidation of the ERISA Actions, the appointment of
the Weber Plaintiffs as interim lead plaintiffs, and the

appointment of their counsel as interim co-counsel. On April 8, 2008, Plaintiffs Aaron Howard and Sheldon Greenberg (the "Howard Plaintiffs") filed a motion seeking to consolidate the ERISA actions, appoint the Howard Plaintiffs interim lead plaintiffs, and appoint their counsel interim lead co-counsel and interim liaison counsel. On April 10, 2008, Plaintiff Lounsbury filed a motion seeking the same. On April 30, 2008, oral argument was held on the motions for consolidation and appointment of interim lead plaintiff and interim lead counsel in the ERISA Cases.

## d. The Derivative Action

The Derivative Action asserts, inter alia, claims for gross mismanagement, waste, and breaches of fiduciary duty by former officers and directors of Bear Stearns on behalf of the Company and a class of former Bear Stearns shareholders who were cashed-out of their shares in the merger between Bear Stearns and JP Morgan at a depressed price resulting from Defendants' misfeasance and/or malfeasance. Originally, two derivative actions were filed in this District asserting similar claims by the Derivative Plaintiffs. Prior to the transfer of the Derivative Action to this Court, on February 14, 2008, pursuant to an order issued by the Honorable Richard M. Berman, the actions filed by the Derivative Plaintiffs were consolidated.

At the same time, Judge Berman denied the Derivative Plaintiffs'
unopposed request to appoint co-lead counsel for the Derivative
Action without prejudice.  A Second Amended Complaint was filed
by the Derivative Plaintiffs on April 10, 2008.

In a footnote in its response to motions filed in the
Securities Actions on June 2, 2008, Defendants asked the Court
to consolidate the Derivative Action with the Securities
Actions.  On June 11, 2008, the Derivative Plaintiffs filed a
second motion asking the Court to appoint co-lead counsel in the
Derivative Action.

## III. CONSOLIDATION

On October 27, 2008, the Court issued an Order to Show
Cause why the Securities Actions should not be consolidated with
the ERISA Actions, and a hearing was held on November 24, 2008.
Based on the responses received by the Court, Plaintiffs SMRS,
Zicherman, Cohen and Birn, Lounsbury, Bransbourg, and the Weber
and Howard Plaintiffs oppose consolidation.  Only Defendants
support the consolidation of all actions.  In seeking to
organize these cases in the most expedient and efficient manner
possible, the Court agrees with plaintiffs that, for the reasons

9

stated below, the Securities Actions should not be consolidated with the ERISA Actions.

Rule 42(a) of the Fed. R. Civ. P. provides: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Consolidation is appropriate in order to serve the interests of "judicial economy" and "to avoid unnecessary costs or delay." Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990).

Defendants argue that consolidation is warranted because all of the actions involve common questions of law or fact, namely the collapse of Bear Stearns. However, this Court is guided by the overwhelming number of courts in this District who have determined that consolidation in this context is not appropriate. See, e.g., Life Enrichment Found. v. Merrill Lynch & Co., Inc., et al., No. 07 Civ. 9633 (LBS) (S.D.N.Y. Mar. 12, 2008); In re Global Crossing, Ltd. Sec. & ERISA Litig., No. 02 Civ. 1472 (GEL) (S.D.N.Y. Dec. 13, 2002); In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC) (S.D.N.Y. Sept. 18, 2002). The Securities and ERISA Actions involve different parties, claims, burdens, pleading standards, losses, and insurance

10

issues. Given the significant differences between the Securities
Actions, governed by the PSLRA, and the ERISA Actions, governed
by a much different federal statutory scheme, consolidation is
not appropriate.

Although not specifically addressed in the Court's
Order to Show Cause, the Derivative Plaintiffs filed a response
asking the Court not to consolidate the Derivative Action with
the Securities Actions pursuant to Defendants' informal request.
Again, Defendants are the only party to support consolidation of
the Derivative Action with the Securities Actions, arguing first
that the Derivative Plaintiffs have lost standing to assert
their derivative claims following the merger of Bear Stearns and
JP Morgan, and second, that consolidation is appropriate here
because both causes of action allege common questions of law or
fact.

Defendants' argument that the Derivative Plaintiffs
lack standing makes clear that the Derivative Plaintiffs will
immediately face factual and legal issues sufficiently
independent and distinct from those in the Securities Actions to
justify not consolidating these claims at this stage in the
litigation.  Further, the Derivative Plaintiffs argue that the
distinct nature of the claims asserted in the Derivative and

11

Securities Actions, the different individual defendants named in the actions, and, notably, potential conflicts between those claims asserted on behalf of Bear Stearns in the Derivative Action and those asserted against the Company in the Securities Actions counsel against consolidation.

Again seeking guidance from other courts, while federal securities and derivative claims have occasionally been consolidated for pre-trial purposes, see Glauser v. EVCI Center Colleges Holding Corp., 236 F.R.D. 184, 186 (S.D.N.Y. 2006); allowing these actions to proceed separately appears to be the more common approach. See, e.g., Merrill Lynch, No. 07 Civ. 9633 (LBS) (S.D.N.Y. Mar. 12, 2008); In re Citigroup Inc. S'holder Derivative Litig., No. 07 Civ. 9841 (SHS) (S.D.N.Y. Aug. 22, 2008). Following the path taken by these courts, this Court has determined that at this time, the Derivative Action should not be consolidated with the Securities Actions. The fact that these Actions are not consolidated, however, does not prevent their reasonable coordination for pretrial purposes.

**IV. THE SECURITIES ACTIONS ARE CONSOLIDATED, SMRS IS APPOINTED LEAD PLAINTIFF, AND THEIR SELECTION OF LEAD COUNSEL IS APPROVED**

**a. The PSLRA Procedure**

12

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not make the determination of the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions . . . ." Id.

The PSLRA then establishes a statutory presumption that a party is the most adequate plaintiff on a showing that it:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only "upon proof by a member of

the purported plaintiff class that the presumptive lead
plaintiff "will not fairly and adequately protect the interests
of the class" or "is subject to unique defenses that render such
plaintiff incapable of adequately representing the class." 15
U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## b. The Securities Actions are Consolidated

As discussed above, consolidation is appropriate where
actions before the Court involve common questions of law or
fact. See Fed. R. Civ. P. 42(a). Here, all of the cases
alleging violations of the federal securities laws involve
common questions of law and fact sufficient to warrant
consolidation.

Where, as here, multiple class actions are "predicated
on the defendants' purported misstatements and omissions (which
allegedly resulted in inflated earnings and revenue) and the
effect of such conduct on the price of [the Company's] stock
when the conduct came to light," consolidation is appropriate.
Pinkowitz v. Elan Corp., PLC, 2002 WL 1822118 (WK), at *2
(S.D.N.Y. July 29, 2002); see Werner v. Satterlee, Stephens,
Burke & Burke, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) ("In
securities actions where the complaints are based on the same

14

'public statements and reports' consolidation is appropriate if
there are common questions of law and fact and the defendants
will not be prejudiced." (citation omitted)).

Here, none of the parties object to the consolidation
of the majority of the Securities Actions, given that these
actions allege violations of the Exchange Act against similar,
if not identical, defendants, and are brought on behalf of all
persons who purchased or otherwise acquired Bear Stearns common
stock during similar class periods.

However, Plaintiffs Greek Orthodox, Schwartz, and
Bransbourg, all of whom allege violations of the Exchange Act in
their complaints, oppose consolidation with the Securities
Actions. According to Greek Orthodox, its action is
sufficiently distinct from each of the other securities class
action lawsuits to require that it proceed separately on behalf
of purchasers of Bear Stearns securities during its distinct
three-day class period.[5]

---

[5] Subsequent to the filing of an additional suit alleging federal securities
violations by Plaintiff Schwartz on May 29, 2008, SMRS moved for the
consolidation of Schwartz as well. In a letter to the Court dated October
13, 2008, Schwartz expressed his opposition to consolidation with the other
Securities Actions and his agreement with Greek Orthodox's position.

Despite this distinction, like the other Securities Actions, Greek Orthodox and Schwartz allege that Defendants misrepresented and/or omitted to state material facts about the true status of Bear Stearns, which ultimately led to its collapse, and allege violations of Sections 10(b) and 20(a) of the Exchange Act. Without more, the fact that two complaints involve a more limited class period is not sufficient to prevent consolidation. See Pinkowitz, 2002 WL 1822118, at *3 ("[W]hile particular plaintiffs may disagree on the precise confines of the relevant class period, these differences also do not preclude consolidation.") (citing Skwortz v. Crayfish Co., Ltd., 2001 WL 1160745 (DAB), at *2 (S.D.N.Y. Sept. 28, 2001). Accordingly, Greek Orthodox and Schwartz are consolidated with the Securities Actions.

Plaintiff Bransbourg also opposes consolidation with the Securities Action, but on the grounds that consolidation would result in prejudice to the class on whose behalf the action was brought, namely current and former employees of Bear Stearns who were compensated through the Company's RSU Plan and/or CAP and whose rights had vested under the terms of the Plans, providing them with a present entitlement to be paid and/or credited an equivalent number of shares of the Company's common stock at the end of a specific deferral period.

16

Despite his argument that because members of the
Bransbourg class did not purchase stock on the open market,
consolidation with the other Securities Actions would result in
irreconcilable conflicts between class members, Bransbourg has
not established that at this early stage, the risk of prejudice
outweighs the strong interest in the efficient resolution of
this litigation. See Primavera Familienstiftung v. Askin, 173
F.R.D. 115, 129 (S.D.N.Y. 1997) ("[S]o long as any confusion or
prejudice does not outweigh efficiency concerns, consolidation
will generally be appropriate." (citation omitted)). The claims
asserted in the Bransbourg Action are identical to those
asserted in the other Securities Actions and are based on the
same statements made by Defendants during the same class period
alleged in Eastside Holdings, among others. "[C]onsolidation is
particularly appropriate in the context of securities class
actions if the complaints are 'based on the same public
statements and reports.'" Glauser, 236 F.R.D. at 186 (citation
omitted). Without providing the Court with concrete examples of
prejudice, Bransbourg's concerns are merely speculative, and
therefore consolidation with the Securities Actions is proper.

In the alternative, Bransbourg asks the Court to
designate a sub-class for current and former Bear Stearns

17

employees. While the Court does not deem a sub-class necessary

at this stage of the litigation, if at any point it appears that

the Bransbourg class is prejudiced by its inclusion in the

Securities Actions, adjustments can and will be made.

#### c. **SMRS is Appointed Lead Plaintiff**

SMRS is the presumptive lead plaintiff of the

Securities Actions. SMRS timely moved for appointment as lead

plaintiff on December 3, 2008, and as shown below, has the

largest financial stake in the relief sought by the class of any

movant. Given that Greek Orthodox and Bransbourg have failed to

rebut the presumption in favor of SMRS, SMRS is appointed lead

plaintiff of the Securities Actions.

#### 1. **SMRS Has the Largest Financial Interest**

Courts have developed a four-factor test to determine

which party has the largest financial interest in the

litigation. The Court is to consider:

> (1) the number of shares purchased during
> the class period; (2) the number of net
> shares purchased during the class period
> (i.e. the number of shares retained during
> the period); (3) the total net funds
> expended during the class period; and (4)

> the approximate loss suffered during the
> class period.

Strougo v. Brantley Capital Corp., 243 F.R.D. 100, 104 (S.D.N.Y.
2007).

SMRS purchased 494,600 shares of Bear Stearns common
stock and sold 11,600 shares during the 15-month class period
alleged, expending $66,722,179 in net funds to acquire those
securities, and suffering losses of over $62,000,000, more than
any other plaintiff.

Greek Orthodox, with losses of $2.7 million, is the
only party to challenge SMRS' claim that it has the greatest
financial interest in this litigation. Greek Orthodox argues
that since SMRS did not purchase any stock during the short
class period alleged in Greek Orthodox's complaint, and
therefore has no losses during the period, SMRS cannot be the
presumptive lead plaintiff for any class that includes Greek
Orthodox.

However, the PSLRA states that the lead plaintiff must
have the "largest financial interest in the relief sought by the
class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Courts have
held that in circumstances like the one here, the lead plaintiff

19

analysis should utilize the most inclusive class period because

"it encompasses more potential class members . . . ." In re

Doral Fin. Corp. Sec. Litig., 414 F. Supp. 2d 398, 402-03

(S.D.N.Y. 2006). Accordingly, SMRS has the largest financial

interest of any party seeking appointment as lead plaintiff.

## 2. **SMRS Satisfies the Rule 23 Requirements**

To qualify as the presumptive lead plaintiff SMRS must

also "satisf[y] the requirements of Rule 23 of the Federal Rules

of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B).

Rule 23(a) provides that one or more members of a

class may sue on behalf of the class if:

> (1) the class is so numerous that joinder of
> all members is impracticable, (2) there are
> questions of law or fact common to the
> class, (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class, and (4) the
> representative parties will fairly and
> adequately protect the interests of the
> class.

At this stage of the litigation, the moving plaintiff is only

required to make a preliminary showing that the adequacy and

typicality requirements have been met. See Weinberg v. Atlas

Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y.

2003); Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001). In

fact, "[a] wide ranging analysis under Rule 23 is not
appropriate [at this initial stage of the litigation] and should
be left for consideration of a motion for class certification."
In re Party City Sec. Litig., 189 F.R.D. 91, 106 (D.N.J. 1999).

Typicality is established where each class member's
claim "arises from the same course of events, and each class
member makes similar legal arguments to prove the defendant's
liability." In re Drexel Burnham Lambert Group, Inc., 960 F.2d
285, 291 (2d Cir. 1992). However, the claims of the class
representative need not be identical to those of all members of
the class. Indeed, "[t]he possibility of factual distinctions
between the claims of the named plaintiffs and those of other
class members does not destroy typicality, as similarity of
legal theory may control even in the face of differences of
fact." In re Prudential Sec., Inc., Ltd. P'ships Litig., 163
F.R.D. 200, 208 (S.D.N.Y. 1995) (citation omitted); see Bishop
v. N.Y.C. Dep't of Hous. Pres. & Dev., 141 F.R.D. 229, 238 (2d
Cir. 1992) ("[T]he typicality requirement may be satisfied even
if there are factual dissimilarities or variations between the
claims of the named plaintiffs and those of other class members
. . . .").

To determine whether a lead plaintiff can "fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(a)(4), the Court looks to factors such as "(1) the size, available resources and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members." Vanamringe v. Royal Group Tech. Ltd., 237 F.R.D. 55, 58 (S.D.N.Y. 2006) (citations omitted).

SMRS easily meets the requirements of typicality and adequacy under the PSLRA. SMRS' claims arise from the same set of events, including the relevant time periods alleged in both Greek Orthodox and Bransbourg, and allege violations of the same federal securities laws as the other Securities Actions. SMRS is a sophisticated institutional investor and its selected lead counsel, Labaton Sucharow and Berman DeValerio have extensive experience in the prosecution of securities class actions.

**3.  The Presumption in Favor of SMRS is Not Rebutted**

In the final step of the lead plaintiff appointment analysis, any competing movants and any other members of the purported class are given the opportunity to rebut the presumption that the movant is the most adequate lead plaintiff.

In order to successfully rebut this presumption, a member of the purported plaintiff class must present proof that the presumptively most adequate plaintiff either "will not fairly and adequately protect the interests of the class," or else "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Both Greek Orthodox and Bransbourg have challenged SMRS' presumptive lead plaintiff status. Greek Orthodox argues that SMRS will not fairly and adequately protect its interests because SMRS did not purchase Bear Stearns Stock during the three-day class period alleged in Greek Orthodox's complaint. According to Bransbourg, SMRS cannot fairly and adequately protect the interests of its purported class given that SMRS purchased securities on the open market, while the Bransbourg class members received their securities through private issuances. Further, the Bransbourg plaintiffs anticipate that Defendants will raise unique defenses against it that the SMRS class members will not have to confront.

Both Plaintiffs, however, have failed to establish that SMRS will not be able to fairly and adequately protect their interests, or prove that SMRS is subject to a unique

23

defense that will "threaten to become the focus of the litigation." In re WorldCom Inc. Sec. Litig., 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (citation omitted). Despite Greek Orthodox's argument that the shorter class period creates a conflict between SMRS and Greek Orthodox, "conclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest . . . ." Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004). Because the class period alleged by Greek Orthodox is entirely encompassed by the period SMRS alleges, SMRS has every incentive to prove that those statements identified in the Greek Orthodox complaint are false and misleading, despite the fact that SMRS itself did not purchase stock during that period.

Bransbourg's arguments that SMRS cannot adequately represent its class are similarly unavailing. Bransbourg argues that Defendants are likely to raise issues that will effectively pit SMRS, who represents open market purchasers of Bear Stearns stock, against Bransbourg, who represents former and present employees of Bear Stearns, and that Bransbourg will be subject to unique defenses. However, the Bransbourg complaint alleges causes of action that are identical to those raised in each of

the other Securities Actions. Rather than providing proof of
any conflicts, Bransbourg has only provided the Court with
speculations about potential future conflicts.

Further, Bransbourg's concern that his purported class
will be subject to a unique reliance defense is not sufficient
to rebut the presumption in SMRS' favor. The PSLRA's "unique
defense" requirement looks to unique defenses that the
presumptive lead plaintiff might be subject to, and Bransbourg
fails to point to unique defenses that SMRS will be subject to
that will prevent it from providing adequate representation to
the purported Bransbourg class. See Cromer Finance Ltd. v.
Berger, 205 F.R.D. 113, 123 (S.D.N.Y. 2001) ("When a defense
that is unique to a class representative threatens to dominate
or even interfere with that plaintiff's ability to press the
claims common to the class, then that threat must be analyzed
with care."); Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d
1146, 1151 n.3 (N.D. Cal. 1999) ("The appropriate inquiry is
whether the lead plaintiff for the class is subject to unique
defenses, not whether class members with unique defenses require
separate leadership.").

Finally, Bransbourg asserts that his damages will be
measured and calculated differently than the other Securities

25

Actions. "To the extent that different formulas may apply to the calculation of any damages suffered . . . this Court can order certification of appropriate sub-classes at a later juncture within its broad discretion in arranging the structure of a class action litigation 'at any time before the decision on the merits.'" Constance Sczesny Trust, 223 F.R.D. at 325 (citation omitted). As previously stated, if the Court finds at the time of class certification, or any other time, that it seems desirable to have a Bransbourg sub-class, the Court will act accordingly. However, at this time, SMRS' presumptive lead plaintiff status has not been rebutted, and SMRS is appointed lead plaintiff of the Securities Actions.

## D. **Selected Counsel Are Approved**

SMRS has selected the law firms of Labaton Sucharow LLP and Berman deValerio Tabacco Burt & Pucillo as co-Lead Counsel. These firms have substantial experience in the prosecution of shareholder and securities class actions, and have frequently served as lead or co-lead counsel in major securities class actions before this Court and others nationwide. Both firms are qualified to serve as lead counsel to the class and are therefore appointed co-lead counsel in the Securities Action.

**V.    THE ERISA ACTIONS ARE CONSOLIDATED, THE HOWARD PLAINTIFFS
       ARE APPOINTED INTERIM CO-LEAD PLAINTIFFS IN THE ERISA
       ACTION AND THEIR CHOICE OF INTERIM LEAD COUNSEL IS
       APPROVED**

**a.    The ERISA Actions are Consolidated**

            Pursuant to Rule 42, consolidation of the ERISA

Actions is appropriate.  Each of these actions contains similar

allegations and seeks similar relief. Given that none of the

parties oppose consolidation of the ERISA Actions, they are

hereby consolidated.

**b.    The Howard Plaintiffs Are Appointed Interim Lead
       Plaintiffs and its Selected Counsel Are Approved
       as Interim Lead Counsel**

            While the plaintiffs in the ERISA Actions and

Defendants agree that consolidation of the ERISA Actions is

appropriate, three plaintiff groups have moved for appointment

as interim lead plaintiff and lead counsel, namely the Weber

Plaintiffs, the Howard Plaintiffs, and Lounsbury.

            Since the ERISA Actions are not governed by the PSLRA,

the Court must look elsewhere for guidance in determining the

most efficient leadership structure.  Rule 23(g)(3), Fed. R.

Civ. P., provides the Court with the authority to "designate

27

interim counsel to act on behalf of a putative class."
"Although neither the federal rules nor the advisory committee
notes expressly so state, it appears to be generally accepted
that the considerations set out in Rule 23(g)(1)(C), which
governs appointment of class counsel once a class is certified,
apply equally to the designation of interim class counsel before
certification." In re Air Cargo Shipping Servs. Antitrust
Litig., 240 F.R.D. 56 (E.D.N.Y. 2006).


Under Rule 23(g)(2), "[i]f more than one applicant
seeks appointment as class counsel, the court must appoint the
applicant best able to represent the interests of the class."
In making that determination, the Court must consider:

> (i) the work counsel has done in identifying
> or investigating potential claims in the
> action; (ii) counsel's experience in
> handling class actions, other complex
> litigation, and the types of claims asserted
> in the action; (iii) counsel's knowledge of
> the applicable law; and (iv) the resources
> that counsel will commit to representing the
> class.

Fed. R. Civ. P. Rule 23(g)(1)(A).  The Court can also consider
"any other matter pertinent to counsel's ability to fairly and
adequately represent the interests of the class."  23(g)(1)(B).
The Manual for Complex Litigation further instructs that, in
selecting lead counsel for a proposed class, the court should

"conduct an independent review . . . to ensure that counsel
appointed to leading roles are qualified and responsible, that
they will fairly and adequately represent all of the parties on
their side, and that their charges will be reasonable." § 10.22
(4th ed. 2004).

Here, each of the parties moving for appointment as
lead plaintiff were participants in the Plan who lost
significant portions of their retirement savings as a result of
the way the Plan was administered by its fiduciaries. According
to plaintiffs, the Plan has over eight thousand participants or
beneficiaries. Each of the movants seeks to represent the
interests of all participants who suffered similar losses.

While there is no question that all of the law firms
representing ERISA Plaintiffs in this action have impressive
resumes and are highly qualified to serve as interim lead
counsel, after a careful review of each law firm's knowledge and
experience in prosecuting ERISA class action cases, the Court
appoints the Howard Plaintiffs interim co-lead plaintiffs and
SBTK and Keller Rohrback interim lead counsel. See In re
Terzaosin Hydrochloride, 220 F.R.D. 672, 702 (S.D. Fla. 2004)
(finding that counsel's "experience in, and knowledge of, the
applicable law in this field" is the "most persuasive" factor

29

when choosing lead counsel"); see also Nowak v. Ford Motor Co.,
240 F.R.D. 355, 361 (E.D. Mich. 2006) (appointing SBTK and
Keller Rohrback interim co-lead counsel primarily due to "their
extensive experience in ERISA litigation").

ERISA fiduciary litigation involving defined
contribution plans and their investments is a highly specialized
area of the law that requires a mastery of class action
litigation and ERISA, as well as regulations promulgated by a
myriad of other governmental agencies.  SBTK's expertise in the
area of ERISA breach of fiduciary class actions has been
recognized by courts throughout the country who have appointed
them lead or co-class action counsel in many cases alleging
causes of action similar to those claimed here.  See In re
Global Crossing Sec. & ERISA Litig., No. 02 Civ. 7453 (GEL); In
re AOL ERISA Litig., No. 02 Civ. 8853 (SWK); In re Bristol-Myers
Squibb Co., ERISA Litig., No. 02 Civ. 10129 (LAP); In re
Citigroup Litig., No 03 Civ. 2932 (LTS); In re Polaroid ERISA
Litig., No. 03 Civ. 8335 (WHP); Koch v. Loral Space & Commc'ns
Ltd., No. 03 Civ. 9729; Wilson v. Fed. Home Loan Mortgage Corp.,
No. 04 Civ. 2632 (JES).

Similarly, Keller Rohrback has served as lead or co-
lead counsel in many prominent ERISA class action cases in this

30

District.  See In re WorldCom, Inc. ERISA Litig., No. 02 Civ.
4816 (DLC); In re Global Crossing ERISA Litig., No. 02 Civ. 7453
(GEL); In re Polaroid ERISA Litig., No. 03 Civ. 8335 (WHP); In
re AIG ERISA Litig., No. 04 Civ. 8141 (JES); In re March ERISA
Litig., No. 04 Civ. 8157 (SWK); In re Pfizer Inc. ERISA Litig.,
No. 04 Civ. 10071 (LTS); In re Merrill Lynch & Co., Inc. Sec.,
Derivative & ERISA Litig., No 07 Civ. 9633 (LBS).

Significantly, SBTK and Keller Rohrback have worked
together as co-lead counsel in several ERISA breach of fiduciary
duty company stock class action cases.  See, e.g., Miller v.
Beazer, No. 07 Civ. 952 (N.D. Ga.); In re Ford Motor Co. ERISA
Litig., No. 06 Civ. 11718 (E.D. Mich.); In re Merck Co., Inc.
Sec., Derivative & ERISA Litig., MDL No. 1658 (D.N.J.).  This
history of cooperation should lead to the efficient, effective,
and professional management and resolution of the ERISA Actions
on behalf of all Plan participants.

In addition, both Keller Rohrback and SBTK possess the
resources necessary to pursue this action.  With over 55 and 54
lawyers, respectively, both firms are capable of prosecuting the
ERISA Actions on behalf of all Plan participants.  Any
objections to this proposed leadership structure on the grounds
that SBTK and Keller Rohrback have no offices in this District

are no longer relevant, as the Court was informed via letter on June 10, 2008, that Keller Rohrback has now opened a New York City office.

Finally, the Howard Plaintiffs have selected Dealy & Silberstein to serve as interim liaison counsel. Dealy & Silberstein has been involved in complex litigations involving ERISA in both state and federal court, and will assist interim co-lead counsel in facilitating communication between the parties. Accordingly, Keller Rohrback and SBTK are appointed interim co-lead counsel for the ERISA Actions and Dealy & Silberstein are appointed interim liaison counsel.

## VI. BROWER PIVEN AND RUF ARE APPOINTED CO-LEAD COUNSEL IN THE DERIVATIVE ACTION

The Derivative Plaintiff's have moved for appointment of Brower Piven and RUF as co-lead counsel in the Derivative Action. Although Defendants urge the Court to consolidate the Derivative Action with the Securities Actions, a position that has been rejected above, they take no position on the question of which law firm is most appropriate for appointment of lead counsel of this Action. Both Brower Piven and RUF have extensive experience litigating derivative actions and have served as lead or co-lead counsel in many actions in this

District and throughout the country.  Accordingly, Brower Piven

and RUF are appointed co-lead counsel of the Derivative Action.

## VII.  CONCLUSION

The motions to consolidate the Securities Actions and

the ERISA Actions are granted.  The motions of SMRS and the

Howard Plaintiffs to serve as lead plaintiffs are granted, and

their selection of counsel is approved.  The Derivative

Plaintiffs motion to appoint co-lead counsel is granted.  All

other motions related to the consolidation of the above-

captioned actions or the appointment of lead plaintiff and/or

lead counsel are denied.

It is so ordered.

New York, N.Y.
December  29 , 2008

ROBERT W. SWEET
U.S.D.J.

33